2024–1350

─────────────────────────

IN THE

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

─────────────────────────

OMAN FASTENERS, LLC,

*Plaintiff-Appellee*

v.

UNITED STATES,

*Defendant-Appellee*

MID CONTINENT STEEL & WIRE, INC.,

*Defendant-Appellant*

─────────────────────────

Appeal from the United States Court of International Trade
in No. 22-00348, Judge M. Miller Baker

─────────────────────────

**APPELLEE'S RESPONSE TO MOTION TO STAY OR CONSOLIDATE**

─────────────────────────

Michael R. Huston
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

Andrew T. Dufresne
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703

Michael P. House
Andrew Caridas
Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
(202) 654–1736
MHouse@perkinscoie.com

Attorneys for Plaintiff-Appellee

February 8, 2024

## Certificate of Interest

I certify that the information below is complete to the best of my knowledge.

Date: February 8, 2024        Signature:  /s/Michael R. Huston

                                      Name:     Michael R. Huston

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| Oman Fasteners LLC | n/a | Guerrero International LLC |

| 4. Other Legal Representatives | | |
|---|---|---|
| Perkins Coie LLP: | John M. Devaney | Sopen B. Shah |
| | Angela R. Jones | Karl J. Worsham |
| | Dan L. Bagatell | |
| *no longer with firm | Caroline Bisk* | |
| | Shuaiqi Yuan* | |

| 5. Related Case |
|---|
| *Mid Continent Steel & Wire, Inc. v. United States*, No. 2023-1039 (Fed. Cir.). *Oman Fasteners, LLC v. United States*, No. 2023-1661 (Fed. Cir.). |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| none |

## Table of Contents

Table of Authorities............................................................................ iv

Table of Abbreviations and Conventions......................................... v

Introduction ........................................................................................1

Background...........................................................................................2

Argument ..............................................................................................6

    I.  The Court should not stay this appeal in favor of
       Mid Continent's now-moot interlocutory appeal............................... 6

    II.  The Court should not consolidate this appeal with
        Mid Continent's now-moot interlocutory appeal............................... 8

Conclusion..........................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Hendler v. United States,*
   952 F.2d 1364 (Fed. Cir. 1991) ....................................................... 8

*Oman Fasteners, LLC v. United States,*
   No. 20-00348, 2023 WL 2233642 (Ct. Int'l Trade
   Feb. 15, 2023, amended Feb. 22, 2023) ("Remand Order") ...................2, 3

*Oman Fasteners, LLC v. United States,*
   No. 22-00348, 2024 WL 163368
   (Ct. Int'l Trade Jan. 5, 2024) ("Final Decision") ...............................2, 3, 5

*Russell v. United States,*
   No. 10-1498, 2011 U.S. App. LEXIS 11042 (Fed. Cir. June 1, 2011).......... 10

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| BlueBr___ | Mid Continent's opening brief page ___, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir.), ECF No. 20 |
| Commerce | U.S. Department of Commerce |
| Customs | U.S. Customs & Border Protection |
| Dkt. ___ | docket item ___ in this appeal |
| Final Decision | *Oman Fasteners, LLC v. United States*, No. 22-00348, 2024 WL 163368 (Ct. Int'l Trade Jan. 5, 2024) |
| GreyBr___ | Mid Continent's reply brief page ___, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir.), ECF No. 24 |
| Mid Continent | defendant-appellant Mid Continent Steel & Wire, Inc. |
| Oman Fasteners | plaintiff-appellee Oman Fasteners, LLC |
| Remand Order | *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) |
| RedBr___ | Oman Fasteners' response brief page ___, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir.), ECF No. 22 |
| Trade Court | United States Court of International Trade |

## Introduction

The Court should deny Mid Continent's motion for a stay. Invoking "convenience," Mid Continent proposes suspending the briefing in this appeal until the Court decides Mid Continent's earlier interlocutory appeal (No. 23-1661) arising from the same case in the Court of International Trade. Mid Continent's earlier appeal No. 23-1661 arose from an injunction issued by the Trade Court. That injunction has since been superseded and no longer affects Mid Continent (or any other party), rendering Mid Continent's interlocutory appeal moot—as Oman Fasteners demonstrated in its pending motion to dismiss appeal No. 23-1661. There is thus nothing to wait for in *this* appeal, which is Mid Continent's only jurisdictionally proper appeal.

In the alternative, Mid Continent proposes to consolidate the two appeals, forgo briefing here, and submit this appeal on the prior briefs. That would make things even messier: much of the earlier briefing in No. 23-1661 focused on the traditional equitable injunction factors that are no longer relevant in this appeal. In short, Mid Continent's proposals would make things more complicated for this Court, not less. This Court should deny Mid Continent's motion here, grant Oman Fasteners' motion to dismiss No. 23-1661, and allow this appeal to proceed normally.

**BACKGROUND**

This is an appeal from the final remand results of an antidumping review. During an administrative review of an antidumping order against appellee Oman Fasteners, Commerce imposed a sky-high antidumping rate of 154.33% on Oman Fasteners' imports. *Oman Fasteners, LLC v. United States*, No. 22-00348, 2024 WL 163368, at *1 (Ct. Int'l Trade Jan. 5, 2024) ("Final Decision"). A rate determination affects the duties Oman Fasteners pays on past imports, and it affects the estimated cash deposits that Customs collects for future ones. To put the 154.33% rate in perspective, the subject imports are steel nails—a commodity product—and every previous administrative review of the subject antidumping order found Oman Fasteners' rates to be 0.0% or nearly so. *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *8 n.12 (Ct. Int'l Trade Feb. 15, 2023, amended Feb. 22, 2023) ("Remand Order").

The 154.33% rate was not based on Oman Fasteners' costs or pricing. It was a punishment for inadvertently submitting one part of one supplemental questionnaire 16 minutes past a 5 PM deadline after Oman Fasteners encountered a technical problem in Commerce's e-filing system. Remand Order, 2023 WL 2233642, at *2–3. Commerce's initial punitive rate was so high that

even paying the resulting cash deposits for new entries would have bankrupted Oman Fasteners before the Trade Court could complete its review of Commerce's determination *Id.* at *9.

In the Trade Court, Oman Fasteners challenged the punitive 154.33% rate as unlawful (which Mid Continent calls the "AFA" issue, *see* Dkt. 11 at 6, 8–11) and sought an immediate injunction against imposition of cash deposits at that 154.33% rate. Final Decision, 2024 WL 163368, at *1. Mid Continent—a competitor of Oman Fasteners—intervened to defend that rate and oppose an injunction. *Id.*; Remand Order, 2023 WL 2233642, at *4. But the punitive 154.33% rate was so blatantly unlawful that the Trade Court called Commerce's use of it "the very definition of abuse of discretion" for three independent reasons. Remand Order, 2023 WL 2233642, at *2, *4–8. The Trade Court also found that every injunction factor favored Oman Fasteners and enjoined Commerce from using that 154.33% rate as the cash deposit rate for new entries, leaving the previous 1.65% rate in effect. *Id.* at *2, *9–13. (Without the injunction, the 154.33% rate would have served as the cash deposit rate until Commerce calculated a new rate to replace it.)

While Commerce's remand determination was pending, Mid Continent filed an interlocutory appeal to challenge the injunction. *See Oman Fas-*

*teners, LLC v. United States*, No. 23-1661 (Fed. Cir.). Mid Continent sought expedited review of that appeal on grounds that it would become moot in a few months: Mid Continent explained (correctly) that once Commerce's *next* administrative review finished, *that* rate would automatically supersede the punitive 154.33% rate for cash deposits on new entries, regardless of the injunction, thus mooting appeal No. 23-1161. Motion for Expedited Briefing, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir. Mar. 27, 2023), ECF No. 5 at 2, 14–17 ("Motion to Expedite"). Oman Fasteners countered that Mid Continent had waited more than a month to appeal and request expedition, and had failed to demonstrate the kind of harm that would warrant such relief. Appellee's Opposition to Motion to Expedite Briefing, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir. Apr. 4, 2023), ECF No. 8. This Court denied Mid Continent's motion for expedited proceedings. Order, *Oman Fasteners*, No. 23-1661 (Fed. Cir. Apr. 5, 2023), ECF No. 12.

Mid Continent's prediction about how things would play out proved exactly right. In the next administrative review (the seventh), Commerce found Oman Fasteners' antidumping rate to be 0.0% and instructed Customs to use that rate going forward for cash deposits. Appellee's Motion to Dismiss Appeal as Moot, *Oman Fasteners, LLC v. United States*, No. 23-1661 (Fed. Cir.

Jan. 29, 2024), ECF No. 48 at 3, 12 ("Motion to Dismiss"). Commerce recognized, in other words, that neither its original 154.33% rate nor the Trade Court's injunction rate of 1.65% mattered anymore—because under the statute its new determination of 0.0% set the governing deposit rate going forward. That was on December 11, 2023. *Id.* at 12. Oman Fasteners' counsel asked Mid Continent to dismiss its appeal No. 23-1661 as moot in accord with its prior representations to this Court, but Mid Continent's counsel refused.

Meanwhile, on remand from the Trade Court, Commerce rejected Mid Continent's arguments and determined that the proper rate for this administrative review (the sixth) was not 154.33% but rather 0.0%. Motion to Dismiss 13–14. The Trade Court affirmed Commerce's remand determination on January 5. Final Decision, 2024 WL 163368, at *1. Mid Continent filed its notice of appeal three days later. It then waited three more weeks—by which point Oman Fasteners had already moved to dismiss appeal No. 23-1661 as moot—before it moved to stay this appeal. Dkt. 11. By then, Mid Continent's earlier appeal had already been moot for 49 days. Now it has been 59 days.

**ARGUMENT**

## I.    The Court should not stay this appeal in favor of Mid Continent's now-moot interlocutory appeal.

Mid Continent asks this Court to wait on the merits of its interlocutory appeal before proceeding with this one. But Mid Continent's motion rests on an incorrect assumption that its earlier interlocutory appeal (No. 23-1661) can and will resolve whether Commerce's original 154.33% rate was lawful. It cannot and will not. The earlier appeal challenged an injunction with a shelf life that has come and gone—that injunction is no longer operative.

Mid Continent's earlier appeal is moot. Before Mid Continent moved to stay or consolidate this appeal, Oman Fasteners moved in No. 23-1661 to dismiss that appeal for mootness. Oman Fasteners explained why: interlocutory appeal No. 23-1661 challenged only an injunction that is no longer operative, so vacating that injunction could not possibly afford Mid Continent any relief. Motion to Dismiss 16–20. While Mid Continent may nonetheless *want* this Court to determine the lawfulness of the punitive 154.33% rate in *that* appeal, doing so would require an advisory opinion that Article III does not allow. *Id.* at 22.

Indeed, Mid Continent previously urged this Court to expedite that interlocutory appeal because it knew—and told this Court expressly—that once Commerce's next (seventh) annual administrative review finished, the rate from that review would supersede the Trade Court's injunction going forward and moot Mid Continent's interlocutory appeal. Motion to Dismiss 2–3, 9–12. And just as expected, the seventh administrative review rate of 0.0% became final in December 2023, and Commerce pursuant to statute instructed Customs to use that rate for cash deposits going forward. *Id.* at 12–13. At that point, the rate at issue in *this* appeal (the sixth administrative review rate) no longer affected cash deposits of estimated duties, and the appeal of the injunction was moot.

Because Mid Continent cannot obtain any relief in No. 23-1661 with respect to the now-defunct injunction, the Court lacks jurisdiction in that appeal. And the interests of judicial economy would not be served by putting the briefing in this case on hold waiting for another appeal that has already become moot.

⁂

This Court should not stay this case pending the outcome on the merits of the now-moot interlocutory appeal. It should instead dismiss that juris-

dictionally defective appeal (No. 23-1661) and allow this one to proceed in the normal course. To be clear, doing so will not prejudice Mid Continent. Because of the merger rule, Mid Continent can raise issues here that it would otherwise have raised in the interlocutory appeal—assuming that they continue to cause Article III harms that this Court can redress. *Hendler v. United States*, 952 F.2d 1364, 1368 (Fed. Cir. 1991).

## II. The Court should not consolidate this appeal with Mid Continent's now-moot interlocutory appeal.

In the alternative, Mid Continent proposes an extreme and unusual form of appellate "consolidation" that would have this Court essentially adopt the briefing from No. 23-1661 in this case and forgo new briefing here. Dkt. 11 at 11. The Court should deny that request too.

There are two problems with Mid Continent's proposal. The first problem is jurisdictional. As explained above, the earlier appeal is moot: Mid Continent cannot obtain any relief with respect to the now-defunct injunction that it appealed. Because there are no longer any live requests for relief in that appeal, there is nothing to properly consolidate this appeal with.

Mid Continent's answer to the jurisdictional problem is a plea of convenience. But that leads to the second problem: consolidating the appeals would be more of a practical headache than anything.

Mid Continent says this Court can simply order the briefing in No. 23-1661 to apply equally here because the issues in this appeal are identical. But that's not correct. Much of the moot appeal was about issues that no longer matter. Contrary to Mid Continent's suggestion, that appeal was not predominantly about the lawfulness of the punitive 154.33% rate (that issue did not even appear in Mid Continent's issue statement, *see* BlueBr2). The briefs were full of other issues. The parties briefed Mid Continent's lack of Article III standing to appeal an injunction that did not constrain it. *E.g.*, RedBr33–38; GreyBr6–13. They briefed whether the Trade Court's procedural docket-management decision was immediately appealable. *E.g.*, RedBr30–33; GreyBr3–4. They briefed whether the Trade Court's trial-consolidation decision was an abuse of discretion. *E.g.*, BlueBr21–24; RedBr38–43; GreyBr4–6. They briefed the injunction factors—irreparable harm (*e.g.*, BlueBr64–70; RedBr43–49), inadequacy of remedies at law (*e.g.*, BlueBr70–72; RedBr50–52), the balance of hardships (*e.g.*, BlueBr72–75; RedBr52–56), the public interest (*e.g.*, BlueBr27–28; RedBr56, RedBr62,

RedBr71)—and briefed the correctness and significance of the Trade Court's applied injunction standard (*e.g.*, BlueBr25–26; RedBr71–72; GreyBr5). Those now-moot issues spanned at least 82 pages combined across the parties' briefs. The argument sections and statements of the case in the now-defunct briefs are littered with them, and the standard-of-review sections did not concentrate on the issues most pertinent to this appeal.

It would be quite inconvenient for Mid Continent to make this Court comb through the parties' No. 23-1661 briefs to figure out which parts remain relevant. Mid Continent's consolidation request is also just odd. Consolidation usually happens before both cases are briefed, not after. *Cf. Russell v. United States*, No. 10-1498, 2011 U.S. App. LEXIS 11042, at *1 (Fed. Cir. June 1, 2011) (denying request to consolidate "because briefing [was] complete" in earlier appeal).

Skipping briefing here also would not "avoid unnecessary delay." Dkt. 11 at 11. Mid Continent's brief in this appeal is due March 12, and it can file faster if it wants to. Argument in No. 23-1661 and its companion case No. 23-1039 likely will not happen until May or August. *See* No. 23-1661, ECF No. 44 (conflicts accepted for April and June); No. 23-1039, ECF Nos. 50, 51 (conflicts accepted for June and July). It is therefore Mid Continent's pro-

posals—including the delay arising from briefing this motion—that will instead likely cause more delay.

Dispensing with briefing would also prejudice Oman Fasteners procedurally. Although Mid Continent is free to waive its own arguments, Oman Fasteners has the right to rely on the full record to present this Court the clearest reasons to affirm the final judgment in a brief that cleanly focuses on the live issues, free of the clutter and now-wasted space devoted to numerous now-moot concerns.

## Conclusion

The simplest course is the best one. This Court should deny Mid Continent's motion to stay this appeal or to consolidate it with Mid Continent's now-moot interlocutory appeal and allow this appeal—the only procedurally proper appeal—to proceed.

Respectfully submitted,

Perkins Coie LLP
by /s/Michael R. Huston

Counsel for Plaintiff-Appellee
Oman Fasteners, LLC

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2). The brief contains 2,165 words, excluding the portions exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f) and Federal Circuit Rule 32(b)(2).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Valkyrie A type.

Dated: February 8, 2024                          /s/Michael R. Huston
                                                              Michael R. Huston